IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | | |
|---|---|---|
| DIANE COFFEY, | ) | |
|     Plaintiff, | ) | Civil Action No. 5:16cv00003 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| HARTFORD LIFE & ACCIDENT | ) | |
| INSURANCE COMPANY, | ) | By:    Joel C. Hoppe |
|     Defendant. | ) | United States Magistrate Judge |

This matter is before the Court on a discovery dispute. Each party filed a brief, ECF Nos. 93 and 94, and the Court held a hearing by conference call on December 9, 2016.

As background, this case involves two claims arising under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. Plaintiff Diane Coffey's first claim concerns denial of disability benefits under a policy issued and administered by Defendant Hartford Life & Accident Insurance Company ("Hartford").[1] Her second claim concerns an alleged breach of fiduciary duty under ERISA's catch all equitable relief provision, 29 U.S.C. § 1132(a)(3). This second claim arises from failed settlement discussions between the parties during which Hartford insisted that Coffey sign a release giving up any right to seek or claim disability insurance coverage or benefits on any future policy issued by Hartford. The discovery dispute concerns this second claim, and some further discussion of the nature of that claim is necessary.

Coffey relies on the Court of Appeals for the Fourth Circuit's decision in *Barron v. UNUM Life Ins. Co. of Am.*, 260 F.3d 310 (4th Cir. 2001), to support her breach of fiduciary duty claim. In that case, Nancy Barron began receiving disability payments under a long-term disability plan administered by UNUM Life Insurance Company of America ("UNUM"). *Id.* at

---
[1] Coffey alleges that Hartford was the "Plan Administrator," which Hartford denies as a legal conclusion.

1

312. In settling her claim for future benefits, Barron executed a release, which required her to relinquish forever all claims against UNUM. *Id.* at 313. Later, Barron recovered from her illness and returned to work at a different employer, and through that employer she enrolled in another, separate long-term disability plan administered by UNUM. *Id.* Barron's symptoms returned, and she filed a claim for benefits under this second plan. *Id.* Relying on the release she signed in conjunction with her earlier claim, UNUM denied Barron's claim. The Fourth Circuit found that UNUM was a fiduciary of the first plan and any benefit UNUM obtained through the release belonged to the plan. *Id.* at 315–16. UNUM could not, consistent with its fiduciary duty, obtain a benefit for itself by limiting its personal liability on the second, unrelated plan. *Id.* Doing so would conflict with UNUM's duty to apply the language of the second plan in adjudicating a claim for benefits. *Id.* at 316. Accordingly, UNUM could not use the release to bar Barron's claim to benefits under the second plan.[2] *Id.* at 317.

To state a claim under ERISA, Coffey would have to show that Hartford was acting as a fiduciary of an ERISA plan, it breached its fiduciary duty under the plan, and Coffey is in need of injunctive or other equitable relief to remedy the breach or enforce the plan. *Adams v. Brink's Co.*, 261 F. App'x 583, 589–90 (4th Cir. 2008). Coffey asserts that by requiring her to agree to the release, Hartford sought a benefit for itself rather than the plan, thereby engaging in self-dealing and breaching its duty to her.[3]

As to the breach of fiduciary duty claim, Coffey has issued interrogatories and requests for production of documents, and she intends to depose Hartford representatives. Generally, in

---

[2] The court also construed the language of the release and found that it did not reach Barron's claim for benefits under the second plan. *Barron*, 260 F.3d at 317–18.

[3] Hartford distinguishes *Barron*, noting that Coffey never signed a release, no release was enforced against her, and she was never denied benefits based on a release. Furthermore, she was not and is not enrolled in a plan that would be subject to the release, had it been signed.

2

ERISA cases the court's review is limited to the administrative record. *Helton v. AT&T Inc.*, 709 F.3d 343, 352 (4th Cir. 2013). "Exceptional circumstances that may warrant an exercise of the court's discretion to allow additional evidence include … circumstances in which there is additional evidence that the claimant could not have presented in the administrative process." *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1027 (4th Cir. 1993) (en banc). A number of district courts, including one in this district, have allowed limited extra-record discovery for claims under § 1132(a)(3). *See Winburn v. Progress Energy Carolinas, Inc.*, Civ. No. 4:11-3527, 2013 WL 3880149, at *3–5 (D.S.C. July 25, 2013) (supplementing record with plaintiff's affidavit and allowing plaintiff to propound requests for admission and defendant to depose plaintiff); *Marlbrough v. Kanawha Ins. Co.*, 943 F. Supp. 2d 684 (W.D. La. 2013); *Cress v. Georgia-Pacific, LLC*, No. 6:08cv5, 2008 WL 3895796, at *1–2 (W.D. Va. July 9, 2008); *see also Sconiers v. First Unum Life Ins. Co.*, 830 F. Supp. 2d 772, 778, 784 (N.D. Cal. 2011) (allowing interrogatories, document requests, and depositions on narrowly drawn issues). As explained by the district court in *Marlbrough*, a breach of fiduciary duty claim that does not arise from interpretation of policy documents, but that concerns materials and events outside of the administrative review process should not be subject to the same discovery constraints as a typical denial of benefits claim. 943 F. Supp. 2d at 692–93. This loosening of the typical constraints on discovery that apply to ERISA claims is necessary where the information relevant to a claim is not likely to come from the administrative record.

In opposing discovery on the breach of fiduciary duty claim, Hartford asserts that discovery is unnecessary because none of the relevant facts are in dispute. Hartford notes that it has admitted it issued the policy, administered it, and decided claims under it. Answer to Am. Compl. ¶ 1, ECF No. 66. Hartford admitted demanding that Coffey sign the release as part of

3

settlement discussions, *id.* at ¶ 21, but Hartford denied it acted in its self-interest or engaged in self-dealing in requiring that Coffey sign the release as part of settlement, *id.* at ¶¶ 23, 32.

Hartford's argument is persuasive in that some information relevant to Coffey's breach of fiduciary duty claim, such as that concerning whether Hartford was a fiduciary, likely comes from plan documents that are in the administrative record. Other relevant information, however, likely will come from sources outside of the administrative record given the nature of the claim and the fact that it arose well after Hartford's benefits determination. In particular, Hartford has not suggested that the administrative record contains information explaining Hartford's motivation in seeking the release. *See Helton*, 709 F.3d at 353–54 (citing *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 342–43 (4th Cir. 2000)) (finding that evidence outside the administrative record may be necessary to evaluate the fiduciary's motives). Such evidence could be relevant to whether Hartford acted in its own interest in limiting its exposure to potential future claims. Accordingly, some amount of discovery beyond the administrative record is warranted.

Even if evidence outside of the administrative record is relevant, however, Hartford also challenges the proportionality of Coffey's discovery requests. The Federal Rules define the scope of discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Some of these considerations, such as the parties' resources and access to information, weigh in Coffey's favor. Other considerations, however, suggest that discovery must be curtailed.

4

As to the importance of the issues in the breach of fiduciary duty claim, the parties agree that the release proposed by Hartford was never signed or enforced in this case, and Coffey's benefits claim was not denied based on the release. Moreover, Hartford has stated in briefing and during the hearing that it will not insist upon the release in future settlement discussions with Coffey. Although Hartford's use of the release to deny benefits to other claimants may present an important issue, that situation is distinguishable from the undisputed facts presented in this case. Additionally, before the failed settlement discussions, Coffey's case focused on a denial of benefits claim, which remains pending in this case, but is not the subject of the disputed discovery requests. Because the release was neither signed nor enforced and Coffey's claim was not denied based on the release, the breach of fiduciary duty claim is of lesser importance.

Considering the amount in controversy, if Coffey succeeds on her breach of fiduciary duty claim, she could be entitled to equitable relief, including surcharge. At the hearing, Coffey agreed that she could not obtain damages for benefits denied in the future because of the unexecuted release. She proposed that Hartford could be required to disgorge any profit accruing to it as a result of the release. Hartford countered that it received no profit from the release because, at the very least, it was never signed. Coffey also asserts that she may be able to enjoin Hartford from using the release against her. Of course, the release is not in force, as it was never signed. Moreover, the release could only come into play as part of settlement discussions and if Hartford again insisted that Coffey sign it—a stance from which Hartford has retreated. Accordingly, the relief possibly available to Coffey on this claim is extremely limited.

Regarding the importance of the materials to resolve the issues in the case, the *Barron* case is instructive. There, the Fourth Circuit examined the language of the two plans and the release in determining that the only explanation for UNUM's use of the release was to further its

self-interest by reducing its insurance risk under the second plan. *Barron*, 260 F.3d at 316. Nothing in the discussion in *Barron* suggests that materials outside of the administrative record were necessary to the court's determination. Thus, *Barron* shows that even limited discovery beyond the administrative record may not be necessary to resolve the issues in the case.[4]

Mindful that the Federal Rules permit liberal discovery that must also be proportional to the needs of the case, I find that the narrow scope of the claim and the limited relief available on it require that discovery regarding Coffey's breach of fiduciary duty claim must be focused on Hartford's fiduciary status, the use of the release in this case, and Hartford's reasons for using the release.

Turning to the individual discovery requests, Interrogatory 4 asks for identification of individuals with knowledge of Coffey's breach of fiduciary duty claim and those facts known to each identified individual. Hartford's primary objection is that this information is privileged. Hartford, however, has not demonstrated with any specificity that the identity of or facts known to such persons are privileged. Accordingly, Hartford is directed to respond to Interrogatory 4 in full within twenty-one (21) days, but may withhold any privileged information identified in a privilege log, *see* Fed. R. Civ. P. 26(b)(5)(A)(ii).

Interrogatory 5 asks for identification of individuals with knowledge of the settlement discussions in this case. Hartford primarily objects that this interrogatory is overly broad and seeks privileged information. Because Coffey's claim concerns the release and not all of the settlement discussions, this interrogatory is overly broad. Accordingly, the interrogatory shall be limited to those facts known to anyone involved in this case concerning Hartford's request in

---

[4] It appears that the administrative record in *Barron* was fully developed in that it contained the initial plan, a signed release, a subsequent plan, and a denial of benefits under the subsequent plan based on the release. This developed record contrasts with the record in Coffey's breach of fiduciary duty claim, which consists of the initial (and only) plan, a proposed and rejected release, and the parties' pleadings, but that contrast also underscores the differences between Coffey's claim and the claim in *Barron*.

settlement discussions that Coffey execute the release. Hartford shall respond to this narrowed interrogatory within twenty-one (21) days, but may withhold any privileged information identified in a privilege log.

Requests for Production of Documents 1 and 3 seek documents relied upon by Hartford in preparing its responsive pleadings and discovery responses. To the extent that Hartford relied on documents outside of the administrative record or the proposed release, it is directed to produce those documents responsive to Coffey's discovery requests, consistent with the limited discovery permitted in this Memorandum Opinion and Order, within twenty-one (21) days, but may withhold any privileged information identified in a privilege log.

Requests for Production of Documents 7 through 12 seek all communications between Hartford and Augusta Health, Augusta Health's Employee Welfare Benefits Plan, and any other person concerning Coffey's lawsuit or the settlement discussions. Hartford's objections to these requests on grounds of relevance, over breadth, undue burden, and proportionality are persuasive. Coffey's breach of fiduciary duty claim concerns Hartford's insistence upon the release during settlement discussions. Communications about other considerations in settlement discussions or other aspects of Coffey's lawsuit exceed the scope of her breach of fiduciary duty claim. Accordingly, these requests for production are narrowed to communications concerning Hartford's use of the release in this case. Hartford is directed to produce such documents within twenty-one (21) days, but may withhold any privileged information identified in a privilege log.

Request for Production of Documents 13 seeks all versions of releases used by Hartford to settle ERISA claims since May 11, 2010. The language of releases used in other cases is not relevant to whether Hartford was a fiduciary or whether use of the proposed release breached its duty in this case. Moreover, the request is overly broad in that it seeks information about every

case (Hartford claims over 1600) settled since May 2010 without additional temporal or any geographic limits. For similar reasons, Coffey's Request for Production of Documents 19, which seeks all documents relating to any complaint or proceeding concerning Hartford's use of the release, is not relevant and is overly broad. Accordingly, Hartford's objections to these requests is sustained.

Requests for Production of Documents 14 through 17 seek Hartford's policies and instruction on settling long-term disability claims. These requests could lead to some relevant evidence, but they are overly broad, as Hartford's settlement practices in general are not at issue. Accordingly, the requests will be narrowed to cover the requested documents that guided Hartford's use of the release in settlement discussions with Coffey. Hartford is directed to produce such documents within twenty-one (21) days, but may withhold any privileged information identified in a privilege log.

Request for Production of Documents 18 seeks reports about the financial impact of the release. In this case, the release was not executed and Hartford did not receive any financial benefit from proposing the release. Thus, this request is not relevant to potential disgorgement of Hartford's profits from the release because none were had in this case. Although evidence of Hartford's financial motivation in proposing the release could show self-dealing, the requested reports appear to concern a very different situation than presented here because Coffey's claim does not concern an executed release used to deny a claim for benefits that provided a financial benefit to Hartford. Moreover, Coffey has not shown that financial reports are necessary to prove self-dealing, especially considering the narrow factual basis for her claim and the limited relief available. As discussed above, the Fourth Circuit in *Barron* did not deem it necessary to examine financial reports from UNUM in finding self-dealing based on UNUM's use of the release. *See*

*Barron*, 260 F.3d at 316 ("The only explanation for UNUM's use of the Release obtained in connection with the [first plan] to bar benefits under the [second plan] is UNUM's interest in reducing its insurance risk under the [second plan]."). Accordingly, I find this request not proportional to the issues in the case, and Hartford's objection to this request is thus sustained.

Coffey also asks to depose a representative from Hartford pursuant to Rule 30(b)(6) and Annette Moore, who signed Hartford's discovery responses. Depending on Hartford's discovery responses, Coffey may need to depose a Hartford representative regarding the release and the reasons for using it in this case. After reviewing discovery provided by Hartford pursuant to this Memorandum Opinion and Order, Coffey may seek leave to conduct focused deposition(s) if necessary.

It is so ORDERED.

The Clerk shall send a copy of this Memorandum Opinion and Order to the parties.

ENTER: January 4, 2017

Joel C. Hoppe
United States Magistrate Judge